UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joshua Adams,<br><br>        Plaintiff,<br>vs.<br><br>177 OGB Realty LLC,<br>177 OPT Realty LLC, and<br>Chocolate Dip LLC,<br><br>        Defendants. | **COMPLAINT**<br><br><br>**Civil No.**                                    . |

## COMPLAINT

Plaintiff, JOSHUA ADAMS (hereinafter, "Plaintiff"), by and through undersigned counsel, hereby files this Complaint and sues Defendants, 177 OGB REALTY LLC, 177 OPT REALTY LLC, and CHOCOLATE DIP LLC (hereinafter, "Defendants"), for injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.,* (hereinafter, the "ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 (hereinafter, the "ADAAG").

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C., §§1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. § 12181, *et seq.*, based upon Defendants' violations of Title III of the ADA (see also, 28 U.S.C. §§ 2201 and 2202).

2.      All events giving rise to this lawsuit occurred in the State of New York. Venue is proper in this Court as the Subject Premises are located in the Southern District.

## PARTIES

3.      Plaintiff, JOSHUA ADAMS, is over the age of 18, *sui juris,* and a resident of

1

Kings County, New York. Plaintiff suffers from congenital conditions known as spina bifida and hydrocephalus, which result in significant impairments to mobility, uses a wheelchair for mobility, and is a qualified individual under the ADA.

4.      Defendant, 177 OGB REALTY LLC, is a Florida limited liability company which is authorized to and does transact business in the State of New York and within this judicial district. Defendant, 177 OGB REALTY LLC, is the co-owner of the property located at 177 Orchard Street, New York, NY 10002 (hereinafter, the "Subject Premises")

5.      Defendant, 177 OPT REALTY LLC, is a domestic limited liability company which is authorized to and does transact business in the State of New York and within this judicial district. Defendant, 177 OPT REALTY LLC, is the co-owner of the Subject Premises.

6.      Defendant, CHOCOLATE DIP LLC, is a New York Limited Liability Company which is authorized to and does transact business in the State of New York and within this judicial district, and is the owner/operator of the restaurant "CHOCOLATE DIP" located at 177 Orchard Street, New York, NY 10002.

7.       New York City Department of Health and Mental Hygiene records show that a Food Service Establishment Permit was issued to CHOCOLATE DIP for the Subject Premises.

8.      CHOCOLATE DIP is a dessert restaurant specializing in Belgian chocolate-covered crepes, waffles, pancakes, and fruit-based treats, all made to order. The establishment provides a welcoming atmosphere, from clean tables to rose covered walls, inviting guests to enjoy rich, freshly prepared desserts in a casual setting. The menu features a variety of indulgent offerings designed for on-site enjoyment.  The Plaintiff has attempted to dine at CHOCOLATE DIP, but was denied entry due to his disability. Significant accessibility barriers limit Plaintiff's ability to fully and equally enjoy the dining experience at CHOCOLATE DIP, in

violation of the ADA.

## FACTUAL ALLEGATIONS AND CLAIM

9.     Plaintiff has visited the Subject Property which forms the basis of this lawsuit in February 2025 and again on July 12, 2025. On such occasions, the Plaintiff's ability to ambulate through the entrance of the Subject Property was constrained, hindered, and thwarted by the structural barriers, to wit; a concrete step sharply rising between the sidewalk and entrance door of the restaurant, and that which was incompatible for wheeled ambulation. More specifically, for purposes of this suit, this rising concrete step was entirely unnavigable for Plaintiff's wheelchair during his visits, without a call or buzzer device found anywhere, and thus after coming upon the architectural barrier step, he found it entirely untraversable, thus preventing him from accessing the public services therein.

10.     Furthermore, at Plaintiff's most recent visit, he waited outside for approximately five minutes before, as averred by Plaintiff, he finally acquired the help of a hispanic male employee, wherein Plaintiff twice inquired 'whether a portable ramp was available so that he could enter the establishment and partake in a dessert'. However, during this latest occasion, the employee responded that there was "no ramp available". Thereupon, and due to the ongoing presence of these barriers and Defendants' failure to comply with the ADA codifications under Title III of the ADA, the Defendants, and each of them, continue to promulgate a prejudicial policy of deliberate and wanton indifference to the Plaintiff's civil rights, and thus there exist concrete and irreparable injury.

11.     Plaintiff has visited the Subject Premises and intends to return to utilize the goods, services, and accommodations offered to the public. However, he is deterred from returning while the discriminatory barriers and non-compliant policies described herein persist.

**12.**     Plaintiff lives only several miles from the Defendants' Facility, passes by the Defendants' Facility at least once per week when he is doing errands, visiting family and friends throughout the borough, and looking to drink and eat out. Moreover, the Defendants' Facility is in a neighborhood that Plaintiff dines out at least two to three times per month. Foremost, Plaintiff has partaken at, and in, nearly all of the neighboring restaurants surrounding the subject facility that are all without obstructions about twice per month, including but not limited to the the Fansway Teriyaki Kitchen, Taqueria Acatlan, Mirinda's Grill, and the La Pontraca bar amongst many others; and thereon affirms that he would eat at the Defendant's restaurant and avail himself of the goods and services offered to the public, were it not for the structural barriers inhibiting his ability to enter the subject facility and utilize the facilities, tables, and seating, all, in direct contravention of Title III of the ADA and provisions under the ADAAG.

**13.**     Plaintiff visited the Facility and encountered barriers to access at the Facility no less than two times, specifically in February 2025 and again on July 12, 2025, engaged the barrier when attempting to approach the entrance door, wherein Plaintiff encountered a set of architectural barrier steps before the entrance; and upon realizing the wheelchair could not safely traverse, caused Plaintiff to turn back and suffer legal harm and injury thereafter. There was no apparent mechanism for assistance, or other means for traversing said architectural barriers at these visits. Plaintiff will continue to suffer legal harm and injury as a result of the illegal barriers to access as set forth in greater detail herein. The Plaintiff continues to dine out in the neighborhood of the Defendants' subject property, and specifically plans to visit this subject property this autumn with family and friends for nights out, as well as holidays and events; and will thereon continue to attempt to access the services and facilities at said premises which have been deprived at all times material.

4

**14.**     Plaintiff's review of online specials and desire to purchase and eat unique dishes not found almost elsewhere else, including the cookie butter crepe and brownie crepe. Furthermore, Plaintiffs interest was piqued as to the Sushi crepe, and trying such a combo clearly underpins Plaintiff's intent to return multiple times this year.

**15.**     Plaintiff avers that upon Defendants' compliance to remove barriers to access and he would visit the Restaurant at least half a dozen times a year for breakfast and desert of such distinctive dishes when eating out in a neighborhood he frequents multiple  times a month.

**16.**     Pursuant to 42 U.S.C. § 12134(a), the Department of Justice, through the Office of the Attorney General, published revised regulations for Title III of the Americans with Disabilities Act of 1990 in the Federal Register on September 15, 2010. These regulations required public accommodations to comply with the updated standards by March 15, 2012.

**17.**     The Subject Premises, as a public accommodation and service establishment, is required by law to comply with the ADA and ADAAG. However, it remains non-compliant with these standards.

**18.**     Plaintiff has suffered harm and injury as a result of personally encountering barriers to access at the Subject Premises, and he will continue to suffer harm due to the Defendants' failure to address the ADA violations described herein; and thereon  has experienced direct and indirect injury as a result of the physical barriers and ADA violations at the Subject Premises and the Defendants' actions or inactions in remedying these violations.

**19.**     Plaintiff intends to return to the Subject Premises in the near future to utilize the goods, services, and accommodations offered. However, his ability to do so is restricted by the ongoing physical barriers and ADA violations that limit access for individuals with disabilities.

<u>**COUNT I**</u>
<u>**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**</u>

5

**(Against All Defendants)**

20.    Plaintiff restates Paragraphs 1-19 as though fully set forth herein.

21.    Defendants, 177 OGB REALTY LLC, 177 OPT REALTY LLC, and CHOCOLATE DIP LLC, have discriminated against the Plaintiff and others with disabilities by failing to provide full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Subject Premises, as required by Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36.

22.    177 OGB REALTY LLC, as the co-owner of the Subject Premises, is responsible for ensuring that the property complies with the ADA, including removing architectural barriers where readily achievable as required by 42 U.S.C., § 12182(b)(2)(A)(iv).

23.    177 OPT REALTY LLC, as the co-owner of the Subject Premises, is responsible for ensuring that the property complies with the ADA, including removing architectural barriers where readily achievable as required by 42 U.S.C., § 12182(b)(2)(A)(iv).

24.    CHOCOLATE DIP LLC, as the operator of the business located at the Subject Premises, is responsible for ensuring that its policies, practices, and any barriers within its leased space comply with the ADA.

25.    The Plaintiff's ability to access the Subject Premises and fully benefit from its goods, services, facilities, privileges, advantages, and accommodations is hindered by various physical barriers, unsafe conditions, and ADA violations, including but not limited to the following:

1.  Inaccessible entrance.

2.  Accessible route to establishment not provided as required.

6

3. Accessible means of egress not provided as required.

4. Existing step at entrance acts as a barrier to accessibility.

5. Required ramp not provided for step at entrance.

> ADAAG 206 Accessible Routes
> ADAAG 206.1 General.
> Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.
> ADAAG 206.2 Where Required.
> Accessible routes shall be provided where required by 206.2.
> ADAAG 206.2.1 Site Arrival Points.
> At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.
> ADAAG 206.4 Entrances.
> Entrances shall be provided in accordance with 206.4.
> Entrance doors, doorways, and gates shall comply with 404 and shall be on an accessible route complying with 402.
> ADAAG 207 Accessible Means of Egress
> ADAAG 207.1 General.
> Means of egress shall comply with section 1003.2.13 of the International Building Code (2000 edition and 2001 Supplement) or section 1007 of the International Building Code (2003 edition) (incorporated by reference, "Referenced Standards" in Chapter 1).
> ADAAG 402 Accessible Routes
> ADAAG 402.1 General.
> Accessible routes shall comply with 402.
> ADAAG 402.2 Components.
> Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4.
> ADAAG 403 Walking Surfaces
> ADAAG 403.4 Changes in Level.
> Changes in level shall comply with 303.
> ADAAG 303.4 Ramps.
> Changes in level greater than ½ inch high shall be ramped, and shall comply with 405 or 406.

6. Required minimum maneuvering clearance not provided at entrance door.

7. Non-compliant change in floor level within required maneuvering clearance at

entrance door.

ADAAG 206 Accessible Routes
ADAAG 206.1 General.
Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.
ADAAG 206.2 Where Required.
Accessible routes shall be provided where required by 206.2.
ADAAG 206.2.1 Site Arrival Points.
At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.
ADAAG 206.4 Entrances.
Entrances shall be provided in accordance with 206.4.
Entrance doors, doorways, and gates shall comply with 404 and shall be on an accessible route complying with 402.
ADAAG 206.4.1 Public Entrances.
In addition to entrances required by 206.4.2 through 206.4.9, at least 60 percent of all public entrances shall comply with 404.
ADAAG 207 Accessible Means of Egress
ADAAG 207.1 General.
Means of egress shall comply with section 1003.2.13 of the International Building Code (2000 edition and 2001 Supplement) or section 1007 of the International Building Code (2003 edition) (incorporated by reference, "Referenced Standards" in Chapter 1).
ADAAG 404.2.4 Maneuvering Clearances.
Minimum maneuvering clearances at doors and gates shall comply with 404.2.4.
Maneuvering clearances shall extend the full width of the doorway and the required latch side or hinge side clearance.
ADAAG 404.2.4.4 Floor or Ground Surface.
Floor or ground surface within required maneuvering clearances shall comply with 302.
Changes in level are not permitted.

8.  Inaccessible service counter.

9.  Non-compliant height of service counter exceeds maximum height allowance.

ADAAG227 Sales and Service
ADAAG 227.1 General.
Where provided, check-out aisles, sales counters, service counters, food service lines, queues, and waiting lines shall comply with 227 and 904.
ADAAG 904.4 Sales and Service Counters.
Sales counters and service counters shall comply with 904.4.1 or 904.4.2.
The accessible portion of the counter top shall extend the same depth as the sales

or service counter top.
ADAAG 904.4.1 Parallel Approach.
A portion of the counter surface that is 36 inches (915 mm) long minimum and 36 inches (915 mm) high maximum above the finish floor shall be provided.
A clear floor or ground space complying with 305 shall be positioned for a parallel approach adjacent to the 36 inch (915 mm) minimum length of counter.

10. Inaccessible dining tables.

11. Required minimum knee and toe clearance not provided at dining tables.

12. A minimum percentage of existing dining tables required to be accessible not provided.

ADAAG 226 Dining Surfaces and Work Surfaces
ADAAG 226.1 General.
Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902.
ADAAG 902 Dining Surfaces and Work Surfaces
ADAAG 902.1 General.
Dining surfaces and work surfaces shall comply with 902.2 and 902.3.
ADAAG 902.2 Clear Floor or Ground Space.
A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided.
ADAAG 306.2 Toe Clearance.
ADAAG 306.2.3 Minimum Required Depth.
Where toe clearance is required at an element as part of a clear floor space, the toe clearance shall extend 17 inches (430 mm) minimum under the element.
ADAAG 306.2.5 Width.
Toe clearance shall be 30 inches (760 mm) wide minimum.
ADAAG 306.3 Knee Clearance.
ADAAG 306.3.3 Minimum Required Depth.
Where knee clearance is required under an element as part of a clear floor space, the knee clearance shall be 11 inches deep minimum at 9 inches above the ground, and 8 inches deep minimum at 27 inches (685 mm) above the finish floor or ground.
ADAAG 306.3.5 Width.
Knee clearance shall be 30 inches (760 mm) wide minimum.

26.     Plaintiff has attempted to access the Subject Premises but has been denied full and

equal enjoyment of the goods, services, programs, and activities offered due to his disability. The

physical barriers, dangerous conditions, and ADA violations described above have caused

Plaintiff to suffer harm, and Plaintiff reasonably expects to face continued discrimination unless and until Defendants are compelled to remove these barriers and comply with the ADA.

27.     In addition to his personal interest in accessing the Subject Premises free of illegal barriers, Plaintiff is an advocate for the rights of individuals with disabilities and serves as a "tester" to ensure public accommodations comply with the ADA. Plaintiff has visited the Premises in his capacity as a tester, encountered barriers to access, engaged with those barriers, and suffered harm as a result. Plaintiff intends to return regularly to verify the Premises' compliance with the ADA and to confirm any modifications are properly maintained. Plaintiff believes that these violations will not be corrected without Court intervention, which will result in continued harm.

28.     Plaintiff, in his capacity as a tester, will return to the Premises once Defendants make the necessary modifications to ensure accessibility for individuals with physical disabilities. Plaintiff will verify compliance with the ADA and confirm that all modifications are complete.

29.     The removal of the physical barriers, dangerous conditions, and ADA violations described herein is readily achievable and can be accomplished without significant difficulty or expense, as defined by 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); and 28 C.F.R. § 36.304.

30.     Plaintiff is without an adequate remedy at law and is suffering irreparable harm. Plaintiff reasonably anticipates continued harm unless Defendants are required to remove the physical barriers, dangerous conditions, and ADA violations at the Subject Premises.

## RELIEF SOUGHT

31.     Plaintiff seeks an injunction requiring Defendants to bring the Subject Premises

into full compliance with the ADA and ADAAG by remediating all violations.

**32.** Pursuant to 42 U.S.C. §12188(a), this Court is provided with authority to grant injunctive relief to Plaintiff, including an order to alter the Subject Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, and closing the Subject Premises until the requisite modifications are completed.

**33.** Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action. The Plaintiff is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants, pursuant to 42 U.S.C., §§ 12205 and 12217.

**WHEREFORE**, Plaintiff respectfully requests that the Court issue a permanent injunction enjoining Defendants from continuing their discriminatory practices, ordering Defendants to remove the physical barriers to access and alter the Subject Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, closing the Subject Premises until the barriers are removed and requisite alterations are completed, and awarding Plaintiff his reasonable attorney's fees, expert fees, costs, and litigation expenses incurred in this action.

Respectfully submitted,

BARDUCCI LAW FIRM, PLLC
5 West 19th Street, 10th Floor
New York, NY 10011
(212) 433-2554

By:    /s/ Maria-Costanza Barducci
Maria-Costanza Barducci, Esq.
   *Attorney for Plaintiff*
Bar No. 5070487
MC@BarducciLaw.com

11